IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OSHEA JENKINS, | ) | |
| | ) | No. 1:20-cv-03782 |
| Plaintiff, | ) | |
| v. | ) | Honorable Elaine E. Bucklo |
| | ) | |
| REGAL CINEMAS, INC., | ) | Magistrate Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY
REGARDING DAMAGES AND DEFENDANT'S EFFORTS TO
COMPLY WITH THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**

Pursuant to Rule 37 and Local Rule 37.2, Plaintiff Oshea Jenkins respectfully requests the Court order Defendant Regal Cinemas, Inc. ("Regal") to fully answer various interrogatories and produce documents related to Regal's compliance with Illinois' Biometric Information Privacy Act and Plaintiff's damages, all of which is highly relevant to fundamental merits issues and necessary to establish whether Regal's violations at issue here were negligent, reckless, or intentional.[1] In support of this Motion, Plaintiff states as follows:

**NATURE OF THE CASE**

This is a case alleging Regal violated Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, in connection with Regal requiring Plaintiff to use a Kronos InTouch biometric timeclock to punch in and out of work while she was employed by Regal. *See Second Am. Comp.* ("*SAC*") ¶¶ 9-11, 30-35 (ECF No. 95).

Specifically, Plaintiff claims Regal collected, captured, possessed, stored, and used her

---

[1] Despite five separate attempts to confer over the course of more than two weeks, including two phone calls, Regal's counsel has refused to make herself available to confer about the issues raised by this Motion. Those efforts to confer are further detailed in **Appendix 1** hereto. The fact discovery cutoff is September 30, *see* ECF No. 94, and Regal is clearly delaying.

1

223249

biometric data (including but not limited to the so-called "mathematical templates" of her fingerprints) without first making the written disclosures and receiving her signed written consent, in violation of BIPA § 15(b). *Id.* ¶¶ 25, 27, 38-40, 55-63.[2] Plaintiff also claims Regal did not develop a biometric data retention schedule or permanently destroy her biometric data within the time frame required by § 15(a). *Id.* ¶¶ 28, 36-37, 44-53. In addition, Plaintiff claims Regal disclosed and redisclosed her biometric data to at least its timeclock vendor, Kronos, without Plaintiff's prior informed consent, in violation of § 15(d). *Id.* ¶¶ 26, 29, 38, 41, 65-76.

BIPA provides for liquidated damages of $1,000 for each "negligent[]" violation, 740 ILCS 14/20(1), and liquidated damages of $5,000 for each "intentional[] or reckless[]" violation, 740 ILCS 14/20(2), which is among the relief Plaintiff seeks, *see SAC* ¶¶ 54, 64, 77.

## ARGUMENT

Rule 26 "provides that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' . . . Courts assess proportionality by 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Gibbs v. ABT Elecs., Inc.*, 2023 U.S. Dist. LEXIS 185270, at *3-4 (N.D. Ill. Oct. 16, 2023) (quoting Fed. R. Civ. P. 26(b)(1)).

It is well established that relevance must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).[3]

---

[2] This Motion uses the phrase "biometric data" to refer to the statutory terms "biometric identifier," "biometric information," or both. *See* 740 ILCS 14/10.

[3] "[T]he definition of 'relevant' did not change with the [2015] amendments to Rule 26." *See, e.g.*, *Tsatas*

Under Rule 33, "[e]ach interrogatory must . . . be answered . . . fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "Therefore, '[a]nswers to interrogatories must be complete, explicit, and responsive.'" *Gibbs*, 2023 U.S. Dist. LEXIS 185270 at *4. "Likewise, under [Rule 34], a party is required to produce documents that are within its 'possession, custody, or control.'" *Id.* (quoting Fed. R. Civ. P. 34(a)(1)). Pursuant to Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

**I. Regal is Wrongfully Withholding Discovery Identifying Each Location Plaintiff's Biometric Data Was Stored (Interrogs. 6, 16).**

Among the most fundamental issues to the § 15(a) and (d) claims in this case is who possessed Plaintiff's biometric data, where it went, and all locations from which it had to be permanently destroyed. *See* 740 ILCS 14/15(a), (d).

Interrogatories 6 and 16 are tailored to those very issues and therefore seek highly-relevant discovery. *See Def.'s Ans. to Interrogs.* at Interrog. 6 (asking for specific description each location in which Plaintiff's data was ever stored and identification of who controls each), Interrog. 16 (asking for identity of each person (including employees of Regal and third-parties) involved in receiving or storing Plaintiff's data and description of each person's involvement), attached as **Exhibit 1**. This information is necessary to determine whether the data was permanently destroyed from all such locations as required by BIPA § 15(a). Along that line, Regal migrated *every* employee's mathematical/biometric template from its server to Kronos' cloud servers in 2016, but has produced no evidence whatsoever that Plaintiff's template housed on Regal's server was destroyed before the migration.

Regal's answer to Interrogatory 6 states that "it housed Plaintiff's mathematical template in Regal Cinemas' server *during her employment*." *Ex. 1* at Ans. to Interrog. 6. This is evasive

---

*v. Airborne Wireless Network, Inc.*, 2022 U.S. Dist. LEXIS 3396, at *4 n.1 (D. Nev. Jan. 7, 2022).

223249

and incomplete because it does not describe the location(s) Plaintiff's template was stored *after* her employment ended on May 26, 2016, *see id.*, yet the period covered by the interrogatory extends to the present, *see Plf's First Set of Written Discovery* at 1 (time frame of requests "shall be December 1, 2014 to the present, unless otherwise indicated by a particular topic or request"), attached as **Exhibit 2**.

It is well-established that "answers to interrogatories must be responsive, full, complete, and unevasive," *e.g.*, *David Mizer Enters. v. Nexstar Broad., Inc.*, 2016 U.S. Dist. LEXIS 117076, at *7 (C.D. Ill. Aug. 31, 2016), and "an evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer," Fed. R. Civ. P. 37(a)(4). Therefore, Regal should be compelled to provide an amended answer that specifically describes all locations Plaintiff's biometric template was stored after her employment ended on May 26, 2016—and that explicitly addresses whether Plaintiff's template was migrated to Kronos' servers, even if that must take the form of a statement that Regal simply does not know.

Regal's answer to Interrogatory 16 merely states Regal "is not aware of any person receiving or storing Plaintiff's biometric identifiers and/or biometric information." *Ex. 1* at Ans. to Interrog. 16. This is evasive and incomplete because it is merely Regal's legal contention as to the nature of the data, when the subject of the interrogatory was intentionally not limited to only biometric identifiers and information precisely to avoid such an answer. *See id.*; *Ex. 2* at 3 (definitions of "fingerprint data" and "Finger Template"). The answer is also incomplete because it then states Regal cannot identify the *Regal* employee (*i.e.* supervisor) who was involved in receiving Plaintiff's data the first time she used the timeclock, while ignoring Kronos employees and the data involved in Plaintiff's subsequent use of the timeclock. *See Ex. 1* at Ans. to Interrog. 16.

To be complete and non-evasive, Regal's answer must also identify the: (1) Regal employees involved in storing Plaintiff's template while it was stored on Regal's servers; and (2) Kronos employees involved in receiving and storing Plaintiff's template in connection with and after the migration. Regal should be compelled to provide an amended answer that either identifies the responsive Regal and Kronos employes or states that Regal does not know their identities. *See David Mizer*, 2016 U.S. Dist. LEXIS 117076 at *7; Fed. R. Civ. P. 37(a)(4).

## II.  Regal is Wrongfully Withholding Discovery about Its Efforts to Comply with BIPA.

### A.  Regal's Compliance with BIPA § 15(a) and Destruction of Plaintiff's Biometric Data (Interrogs. 7, 12; Doc. Reqs. 7-9).

Two fundamental issues related to Plaintiff's § 15(a) claims are whether Regal developed a publicly-available written policy "for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining [them] has been satisfied or within 3 years of the individual's last interaction with [Regal], whichever occurs first," and whether Regal "compl[ied] with" those destruction timeframes or unlawfully retained Plaintiff's data. 740 ILCS 14/15(a); *see also Sherman v. Brandt Indus. USA*, 500 F. Supp. 3d 728, 735 (C.D. Ill. 2020) ("That Defendant further violated [BIPA § 15(a)] by failing to develop a written policy does not shield it from the requirement that it destroy information within a prescribed period of time."); *Initial Status Report* § A(5)(3), (7)-(8) (ECF No. 19).

Interrogatories 7 and 12, and document Requests 7-9, are narrowly tailored to those issues and therefore seek highly-relevant discovery. *See Ex. 1* at Interrog. 7 (as to each storage location responsive to Interrogatory 6, requesting date "Plaintiff's" data was "permanently destroyed" and identities/roles of each person involved); *Def.'s Ans. to Doc. Reqs.* at Req. 9 (seeking documents reflecting whether or not Regal permanently destroyed "Plaintiff's" data in each storage location including those responsive to Interrogatory 6, the "specific manner of destruction," and date that

5

occurred), attached as **Exhibit 3**; *Ex. 1* at Interrog. 12 (seeking detailed description of each publicly-available policy Regal had for permanently destroying biometric data as required by § 15(a), date range each was in effect, and how each was publicly available); *Ex. 3* at Req. 7 (seeking a copy of each publicly-available written §15(a) policy Regal had, and documents reflecting date range each was in effect and publicly-available, and how public was able to obtain each), Req. 8 (seeking documents reflecting whether or not Regal complied with any § 15(a) policy it had that's responsive to Document Request 7).

Regal's answer to Interrogatory 7 describing three ways "mathematical templates" in general "are commonly deleted" is non-responsive because the subject of the interrogatory is *Plaintiff's* mathematical template. *See Ex. 1* at Ans. to Interrog. 7. The rest of the answer providing a date *range* during which Plaintiff's template was deleted—but only "[t]o the extent [it] had not already been deleted"—is evasive and incomplete because it fails to address destruction of Plaintiff's template from Regal's server (*i.e.* where Regal admits it was stored during her employment) and provide the date Plaintiff's template on Regal's server was destroyed. *See id.* So too with respect to the document the answer identifies pursuant to Rule 33(d) because it does not reflect any destruction date or even identify a storage location to which it pertains. *See id.* (identifying Bates #29); *REGALCINEMAS029*, attached as **Exhibit 4**. As a result, the Court should compel Regal to provide an amended answer that either states the date Plaintiff's mathematical template was permanently destroyed from Regal's server and every other location in which it was ever stored—or states Regal does not know if or when Plaintiff's template was destroyed, which is clearly the actual truth as to at least the copy stored on Regal's server.

Regal's response to Document Request 9 is evasive and incomplete for the same reasons. *See Ex. 3* at Resp. to Req. 9. Specifically, the Marlowe Declaration and documents it identifies do

6

223249

not reflect the date or describe the specific manner in which *Plaintiff's* biometric template was destroyed from each storage location. Rather, the Marlowe Declaration merely states three general ways "biometric templates" already collected "are commonly deleted," and vaguely states Plaintiff's template was destroyed "after her employment ended by one of these three methods" without giving a date, and the Marlowe Declaration and documents only address deletion from Kronos' cloud servers thereby ignoring the date and manner of destruction from Regal's servers and any other storage locations. *See id.*; *Marlowe Declaration* ¶¶ 8-15, attached as **Exhibit 5**.[4] It is clear Regal would have identified in its response and produced documents reflecting the date and manner in which Plaintiff's template was destroyed from Regal's server and any other storage location if such documents existed. A proper, non-evasive answer to Request 9 must make that clear by expressly stating Regal "has produced all responsive documents in its possession, custody, or control." The Court should compel Regal to provide such a response.

Regal's answer to Interrogatory 12 is non-responsive because it does not identify or describe (in detail or otherwise) any § 15(a) policy Regal had, state the date range each such policy was in effect, and describe how the public could obtain a copy of each. *See Ex. 1* at Ans. to Interrog. 12. Instead, it recites non-responsive information about Regal's "onboarding process" and non-responsive legal argument about Plaintiff's use of the timeclock and that her § 15(a) claim is time-barred, and thus constitutes a failure to answer. *See id.*[5] Again, the existence or non-existence of any responsive policy for biometric templates collected by the timeclock Plaintiff used is relevant to whether Regal violated § 15(a) with respect to Plaintiff. The Court should

---

[4] Plaintiff will submit for *in camera* review the other 55 pages of documents referenced in Regal's response to Document Request 9 if the Court so desires.

[5] Judge Bucklo already rejected Regal's argument that Plaintiff's § 15(a) claim is time-barred in denying Regal's motion to dismiss. *See* ECF No. 112 at 3-4.

therefore compel Regal to provide an amended answer that either describes in detail each § 15(a) policy Regal had and provides as to each the other information sought—or unequivocally states under oath that Regal had no written § 15(a) policy, which is clearly the actual truth.

Regal's response to <u>Document Request 7</u> is evasive and incomplete because the Marlowe Declaration and documents it identifies—all of which were produced by *Kronos*—plainly do not constitute a § 15(a) policy much less *Regal's* § 15(a) policy, which is what the request seeks. *See Ex. 3* at Resp. to Req. 7. Indeed, the response admits as much on its face. *See id.* (conceding those documents do not *constitute* a written, publicly-available § 15(a) policy but are merely "illustrative of [Regal's] policies and practices"). Nor can *Kronos'* documents reflect the date range any *Regal* § 15(a) policy was in effect or publicly-available.[6] The Court should compel Regal to provide an amended response that unequivocally states the actual truth—that Regal did not have any written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

Regal's response to <u>Document Request 8</u> is non-responsive and evasive because the documents it identifies necessarily cannot bear on whether or not Regal complied with a written publicly-available § 15(a) policy that Regal clearly did not have. *See Ex. 3* at Resp. to Req. 8. Since Regal had no § 15(a) policy, the Court should compel Regal to provide an amended response to Request 8 that unequivocally states Regal does not have any responsive documents in its possession, custody, or control.

Again, evasive or incomplete answers violate Rule 37 and are the equivalent of no answer

---

[6] Plaintiff will submit for *in camera* review Kronos' documents referenced in Regal's response to Document Request 7 if the Court so desires.

at all. *See* Fed. R. Civ. P. 37(a)(4). The foregoing discovery is related to express elements of Plaintiff's § 15(a) claims, and Regal should therefore be compelled to provide complete, responsive, unequivocal, and un-evasive amended answers to Interrogatories 7 and 12 and amended responses Document Requests 7-9, as specifically detailed above.

### B. Regal's Compliance with BIPA § 15(b) (Interrogs. 8-9; Doc. Reqs. 4-6).

Two fundamental issues related to Plaintiff's § 15(b) claims are whether Regal "inform[ed]" Plaintiff or her legally-authorized representative "in writing that a biometric identifier or biometric information is being collected or stored" and "of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used, *see* 740 ILCS 14/15(b)(1)-(2), and whether Regal "receive[d] a written release executed by" Plaintiff or her legally-authorized representative, *see id.* at § 15(b)(3); *see also Initial Status Report* § A(5)(4)-(6) (ECF No. 19).

Interrogatories 8 and 9 are contention interrogatories that track those statutory requirements verbatim, as do Document Requests 4-6, all of which are therefore narrowly tailored to those issues and seek highly-relevant discovery. *See Ex. 1* at Interrog. 8 (asking whether Regal contends it received a § 15(b)(3) written release executed by Plaintiff, and if so, requesting additional substantive information related to basis for contention), Interrog. 9, (same as to whether Regal informed Plaintiff in writing of the information required by § 15(b)(1)-(2)); *Ex. 3* at Req. 4 (seeking documents that constitute or reflect Regal informing Plaintiff in writing of the information required by § 15(b)(1)), Req. 5 (same as to information required by § 15(b)(2)), Req. 6 (same as to Regal receiving § 15(b)(3) written release executed by Plaintiff).

Regal's answers to <u>Interrogatories 8 and 9</u> are evasive, incomplete, and non-responsive because they do not answer the initial question posed—leaving Plaintiff to guess whether Regal

9

223249

maintains the contention which is the subject of each interrogatory. *See Ex. 1* at Ans. Interrogs. 8-9. To the extent Regal does maintain those contentions, both answers are likewise incomplete and evasive because they do not provide the additional substantive information sought related to the basis for the contention. *See id.* As such, the Court should compel Regal to provide amended answers to both interrogatories that unequivocally answer with a simple "yes" or "no" the initial question posed, and if the answer is yes, that also provide the additional substantive information sought regarding the basis for the contention or unequivocally state that information does not exist. *See, e.g.*, *Auto Meter Prods. v. Maxima Techs. & Sys., LLC*, 2006 U.S. Dist. LEXIS 81687, at \*6 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories after considerable discovery, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories.") (collecting cases).

Regal's responses to Document Requests 4 and 5 are evasive, incomplete, and non-responsive because the documents they identify—all of which were produced by *Kronos*—necessarily cannot constitute or reflect *Regal* informing Plaintiff in writing of the information required by § 15(b)(1)-(2), thus demonstrating they are non-responsive. *See Ex. 3* at Resp. to Reqs. 4-5. Indeed, Regal's response admits this on its face. *See id.* (conceding those documents are merely "illustrative of [Regal's] communications" generally). Regal's response to Document Request 6 is likewise evasive, incomplete, and non-responsive because the documents it identifies are merely Plaintiff's time records, which plainly do not constitute a written release executed by Plaintiff or reflect Regal receiving such a release. *See Ex. 3* at Resp. to Req. 6. Once again, the response admits this on its face. *See id.* (conceding those documents do not constitute a § 15(b)(3) written release signed by Plaintiff by arguing they are merely "illustrative of Plaintiff's knowing and voluntary informed consent"). The Court should therefore compel Regal to provide amended

responses to Document Requests 4-6 that unequivocally state the truth—that Regal has no responsive documents in its possession, custody, or control.

### C. Regal's Compliance with BIPA § 15(d) (Interrogs. 10-11).

Two fundamental issues related to Plaintiff's § 15(d) claims are whether Regal informed Plaintiff that her mathematical template would be "disclose[d], redisclose[d], or otherwise disseminate[d]" to a third party, and whether Plaintiff or her legally-authorized representative "consent[ed] to the disclosure or redisclosure." *See* 740 ILCS 14/15(d).

Interrogatories 10 and 11 are contention interrogatories that track those statutory requirements verbatim, and thus, are narrowly tailored to those issues and seek highly-relevant discovery. *See Ex. 1* at Interrog. 10 (asking whether Regal informed Plaintiff her data "would be disclosed, redisclosed, disseminated, transferred, and/or transmitted to Kronos or any other third-party," and if so, requesting additional substantive information related to basis for contention), Interrog. 11 (same as to whether Regal contends Plaintiff "consented to the disclosure, redisclosure, dissemination, transfer and/or transmission" of her data "to Kronos or any other third-party").

Regal's answers to Interrogatories 10 and 11 are evasive, incomplete, and non-responsive because they do not answer the initial question posed—leaving Plaintiff to guess whether Regal maintains the contention which is the subject of each interrogatory. *See Ex. 1* at Ans. Interrogs. 10-11. To the extent Regal does maintain those contentions, both answers are likewise incomplete and evasive because they do not provide the additional substantive information sought related to the basis for the contention. *See id.* As such, the Court should compel Regal to provide amended answers to both interrogatories that unequivocally answer with a simple "yes" or "no" the initial question posed, and if the answer is yes, that also provide the additional substantive information

sought regarding the basis for the contention or unequivocally state that information does not exist.

### III. Regal is Withholding Discovery Regarding Plaintiff's Damages, *i.e.* the Number of Times Plaintiff Used the Timeclock (Interrog. 4).

Interrogatory 4 asks Regal to "state the total number of times Plaintiff used" the timeclock at issue "and the date and time of each use." *See Ex. 1* at Interrog. 4. This information is directly relevant to damages because BIPA expressly provides a prevailing party "may recover [statutory damages] for each violation." 740 ILCS 14/20. Construing the BIPA's plain language, the Illinois Supreme Court holds "[a] party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan or collection." *Cothron v. White Castle Sys.*, 216 N.E.3d 918, 924-25 (Ill. 2023) (¶ 24); *see also id.* at 925 (¶ 28) ("As with section 15(b), we conclude that the plain language of section 15(d) applies to every transmission to a third party."); *id.* at 929 (¶ 45) ("the plain language of section 15(b) and 15(d) shows that a claim accrues under the Act with every scan or transmission of biometric [data] without prior informed consent").

Regal's answer to Interrogatory 4 attempts to rely on Rule 33(d) by citing two different types of business records Regal produced related to Plaintiff's time and work attendance. *See Ex. 1* at Ans. to Interrog. 4 (referencing documents produced in response to Document Request 3); *Ex. 3* at Resp. to Req. 3 (identifying 3 pages of Timecard Manager Edits, and 25 pages of records of Plaintiff clocking in and out of work).[7] But Plaintiff has no knowledge regarding the meaning of Regal's business records cited in the answer, or the interplay between the two different types of records cited. Further compounding that problem is the fact there various icons (*e.g.* arrows/triangles, dialogue bubbles) with unknown meanings littering the records.

---

[7] Plaintiff will submit these documents for *in camera* review if the Court so desires.

223249

As such, "the burden of deriving or ascertaining the answer" from Regal's business records is <u>not</u> "substantially the same for either party" and Rule 33(d) is not available. Fed. R. Civ. P. 33(d). Regal should therefore be compelled to provide a narrative answer to Interrogatory 4 that expressly states the total number of times Plaintiff used the timeclock at issue.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order: **(1)** granting this Motion; and **(2)** compelling Regal to:

- A. provide an amended answer to <u>Interrogatory 6</u> that specifically describes <u>all</u> locations Plaintiff's biometric template was stored—and that explicitly addresses whether Plaintiff's template was migrated to Kronos' servers, even if that must take the form of a statement that Regal simply does not know;

- B. provide an amended answer to <u>Interrogatory 16</u> that identifies the: (1) Regal employees involved in storing Plaintiff's template while it was stored on Regal's servers, or states that Regal does not know their identities; and (2) Kronos employees involved in receiving and storing Plaintiff's template in connection with and after the migration, or states that Regal does not know their identities;

- C. provide an amended answer to <u>Interrogatory 7</u> that either states the date Plaintiff's mathematical template was permanently destroyed from Regal's server and every other location in which it was ever stored—or states Regal does not know if or when Plaintiff's template was destroyed, which is clearly the actual truth as to at least the copy stored on Regal's server;

- D. provide an amended response to <u>Document Request 9</u> that expressly states Regal has produced all responsive documents in its possession, custody, or control;

- E. provide an amended answer to <u>Interrogatory 12</u> that either unequivocally states that Regal had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, or that describes in detail each such policy Regal had and provides as to each such policy the other information sought;

- F. provide amended responses to <u>Document Requests 7 and 8</u> that unequivocally state Regal does not have any responsive documents in its possession, custody, or control;

- G. provide amended answers to <u>Interrogatories 8 and 9</u> that unequivocally answer with a simple "yes" or "no" the initial question posed, and if the answer is yes, that also provide the additional substantive information sought regarding the basis for the contention or unequivocally state that information does not exist;

- H. provide amended responses to <u>Document Requests 4-6</u> that unequivocally state Regal

13

has no responsive documents in its possession, custody, or control;

I. provide amended answers to <u>Interrogatories 10 and 11</u> that unequivocally answer with a simple "yes" or "no" the initial question posed, and if the answer is yes, that also provide the additional substantive information sought regarding the basis for the contention or unequivocally state that information does not exist; and

J. provide a narrative answer to <u>Interrogatory 4</u> that expressly states the total number of times Plaintiff used the timeclock at issue and the date and time of each use; and

**(3)** awarding any further relief the Court deems necessary and proper.

Dated: August 13, 2024

Respectfully Submitted,

OSHEA JENKINS, Plaintiff

By: /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com

***Attorneys for Plaintiff***

# APPENDIX 1

On July 24, the undersigned requested a conferral with Regal's counsel to discuss deficiencies in Regal's answers to Plaintiff's first set of interrogatories and document requests, and Regal's document production. *See July 29, 2024 Email Thread* at 7, attached as **Exhibit 6**. On July 25, pursuant to Rule 37, the undersigned sent Regal's counsel a detailed list of the discovery deficiencies to be discussed (the "Rule 37 email"), once again requesting a conferral and providing his availability for the conferral. *See id.* at 2-6.

After spending more time writing posturing emails about the unsuccessful settlement conference than it would take to review Plaintiff's Rule 37 email in order to confer, *see July 27, 2024 Email Thread*, attached as **Exhibit 7**, Regal's counsel sent an email on July 28 making several pretextual arguments regarding the discovery deficiencies and refusing to provide her availability for a conferral, stating Regal needed more time to review Plaintiff's Rule 37 email and "will let you know when we are ready to discuss," *see Ex. 6* at 2.

On July 29, the undersigned responded to Regal's pretextual arguments, and requested a conferral yet again about the discovery deficiencies. *See Ex. 6* at 1. But Regal's counsel did not respond.

On August 1, having received no response to his July 29 conferral request, the undersigned called Regal's counsel at approximately 1:12 p.m. in an attempt to confer about, *inter alia*, the discovery deficiencies, or at least schedule a conferral. Regal's counsel did not answer, so the undersigned left a voicemail.

But Regal's counsel never called back. Instead, Regal's counsel sent an email *five days later* on August 6 that once again refused to provide availability for a conferral, instead suggesting once again that Regal needed more time to review Plaintiff's four-page Rule 37 email sent almost

two weeks earlier and stating Regal "will contact you when we are ready to discuss." *See Aug. 6, 2024 Email Thread* at 1, attached as **Exhibit 8**.

Regal's counsel had plenty of time between July 25 and August 6 to review Plaintiff's Rule 37 letter and confer in good faith—but rather than do so, Regal's counsel was hard at work preparing a legally-deficient Rule 68 offer of judgment, which she served less than twelve (12) hours after claiming for the second time in 10 days she needed more time to review the Rule 37 email before she would confer. *See Aug. 7, 2024 Email Thread* at 1 (sent on Aug. 7 at 9:36 a.m.), attached as **Exhibit 9**; *R.68 Offer of Judgment*, attached as **Exhibit 10**; *Ex. 8* at 1 (sent on Aug. 6 at 11:15 p.m.).

Rather than conferring in good faith, Regal's counsel also found time to coordinate with its bankruptcy counsel to prepare a five-page, single-spaced letter which was sent on August 7, just over twelve (12) hours after Regal baselessly claimed it did not have time to confer (which letter attempts to strong-arm Plaintiff into accepting the Offer of Judgment, but really just confirms the offer is deficient). *See 2d Aug. 7, 2024 Email Thread* at 1-2 (sent on Aug. 7 at 11:53 a.m.), attached as **Exhibit 11**; *Ins. Coverage Ltr.*, attached as **Exhibit 12**.[8]

So on August 8 at 11:27 a.m., the undersigned called Regal's counsel again, this time in an attempt not only to confer about, *inter alia*, the discovery deficiencies or at least schedule a conferral, but also to confer about Plaintiff's intent to file this Motion as a result of Regal's counsel's ongoing refusal to confer. As of the time of this filing, Regal's counsel still has not

---

[8] The Offer of Judgment is for Plaintiff to submit an unsecured claim for $495,000 in the bankruptcy proceeding, *Ex. 10* at 1, which Plaintiff can do anyway and has already done using a higher total amount. The letter from Regal's bankruptcy counsel confirms this unsecured claim for $495,000 is, in fact, for an unknown about. *See Ex. 12* at 4 (explaining "the Debtors estimated that recoveries for Class 5B Allowed General Unsecured Claims would be anywhere from 0.7% to 4.8%," but "the Litigation Trust is not certain of the number or amount of Claims that will ultimately be Allowed" and "[s]uch differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Class 5B Allowed General Unsecured Claims under the Plan").

223249

called back or otherwise attempted to contact the undersigned.

      Not coincidentally, fact discovery in this case closes on September 30.  *See* ECF No. 94.

As a result, Plaintiff is left with no choice but to seek relief from the Court.

223249

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on August 13, 2024, I caused a copy of the foregoing ***Plaintiff's Motion to Compel Discovery Regarding Damages and Defendant's Efforts to Comply with the Illinois Biometric Information Privacy Act*** to be served upon all counsel of record via electronic filing using the CM/ECF system.

                                              /s/ Theodore H. Kuyper

223249