**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSHEA JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 3782 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| REGAL CINEMAS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the following reasons, the plaintiff's discovery motions [Dkt. #137, #140, #141, 142] are granted.

This is another in what seems to be an endless parade of cases filed under Illinois' Biometric Information Privacy Act (BIPA). Like most BIPA cases, this one has dragged on for years for one reason and another. Most of the delay has been due to some rather vague drafting by the Illinois legislature; some has been due to lengthy extensions of the fact discovery schedule in December 2024 [Dkt. ##148, 149 (56 days)] and September 2024 [Dkt. ##134, 135 (81 days)]. And, some has been due to the parties' inability to agree on a number of discovery issues that ought to have been resolved under Local Rule 37.2.

That Rule requires parties to negotiate *in good faith* over their differences in a discovery dispute before eschewing their responsibilities and seeking judicial intervention. Good faith actually means something other than refusing to budge. *See, e.g., Gunn v. Stevens Security & Training Servs., Inc* 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Chicago Reg. Council of Carpenters Pension*

*Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("... adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2."). But, it would seem that is what occurred here.

On August 13, 2024, the plaintiff filed two motions to compel – a Motion to Compel Discovery Regarding Damages and Defendant's Efforts to Comply with the Illinois Biometric Information Privacy Act and a Motion to Compel Discovery Regarding Defendant's State of Mind and Affirmative and Other Defenses – totaling about 150 pages of briefs and exhibits. [Dkt. ##127-129]. Defense counsel failed to respond to the plaintiff's request for a Local Rule 37.2 meet and confer, so I denied those motions without prejudice on August 14th and ordered defense counsel to comply with the Local Rule. The parties purportedly then met on August 16th. In other words, they had a single meeting – they don't say for how long – to resolve all those discovery differences. On its face, that does not satisfy the spirit of the Local Rule. *See, e.g., Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2022 WL 17082587, at *1 (N.D. Ill. Nov. 18, 2022)("If two sides are battling over nine separate discovery issues for at least five months, a single phone call does not meet their Local Rule 37.2 obligations."); *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958B59 (N.D. Ill. 2018)("Chatting for a bit about a dispute .... is not engaging in a good faith meet and confer."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute ... doesn't come close to sufficing."); *Chamberlain Grp. v. Lear Corp*., 2010 WL 2836975, at *2 (N.D. Ill. 2010)(single face-to-face meeting did not meet the local rule's requirements).

2

Three months later, the plaintiff filed not two, but *three* motions to compel: a Motion to Compel Discovery Regarding Damages and Defendant's Efforts to Comply with the Illinois Biometric Information Privacy Act, a Motion to Compel Discovery Regarding Defendant's State of Mind and Affirmative and Other Defenses, and a Motion to Deem Admitted First Set of Requests for Admissions to Defendant. These motions totaled not just 150 pages of briefs and exhibits, but 300 pages of briefs and exhibits. [Dkt. ##137-138, 140-142]. Over the years, I have been presented with all too many *pro forma* attempts to comply with Local Rule 37.2. The court gets it. It looks good to a client if their lawyer refuses to give an inch. But, this is the first time in the court's memory that the attorneys in a case have actually made matters *worse* by meeting and conferring.

When lawyers decide to hold their breath and refuse to budge, and present the matter to the court, a court has broad discretion to resolve their disputes. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). That discretion means that in most instances, there is no "right" or "wrong" answer, and that is why it behooves parties to work out their difficulties. *See Ledo's Pizza Sys., Inc. v. Ledo's, Inc.*, 2022 WL 159559, at *1 (N.D. Ill. 2022); *Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791, at *2 (N.D. Ill. 2021). Absent a negotiated agreement between counsel, the "loser" on a discovery motion might be "right" – in the judgment of some decision-makers – but "wrong" in the eyes of another. In matters of discretion, "it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *See also United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

Thus, the "loser" will have little or no effective recourse other than to ultimately prove that no reasonable person could agree with the discovery ruling. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1116 (7th Cir. 2013). That, unfortunately, is the path the parties have chosen here. It is a path some judges have called the "hand-holding" phase of a case.[1]

It is difficult to say how we got to this point. Usually, when lawyers choose the "no-prisoners" path in discovery disputes, there has been a long history of vitriol. This case certainly qualifies as long, but for a fair portion of its existence it's been in stasis. It was filed on May 5, 2020, as a class action. On August 3, 2020, the defendant filed a motion to dismiss [Dkt. #13] that took two months to brief. [Dkt. ##17, 21, 26]. Another two months went by, and the case, like most BIPA cases pending at the time, was stayed pending the Seventh Circuit's resolution of the appeal in *Cothron v. White Castle Systems, Inc*., No. 20-3202 (7th Cir.). [Dkt. #32]. During the first several months of the stay, the parties conducted informal discovery regarding the defendant's destruction of biometric data under Judge Feinerman's supervision. [Dkt. ##35, 37, 41, 43, 45, 47]. After an *in camera* review of discovery from the defendant, Judge Feinerman seemingly resolved the destruction issue, at least for the time being, in the defendant's favor on July 12, 2021:

---

[1] *See, e.g., Garrard v. Rust-Oleum Corp*., No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023)("The referral from [the district court] was for "discovery supervision," not hand-holding."); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 11237724, at *1 (M.D. Ga. Oct. 19, 2022)("... the drafters of the Rules provided a logical, straightforward process that should be easily navigable by good lawyers without extensive hand-holding by the Court, so that discovery can be conducted efficiently, expeditiously, and without unnecessary expense."); *Williams v. Ests. of Hyde Park, LLC*, 2020 WL 5702297, at *1 (N.D. Ill. 2020)("It's just -- I shouldn't have to hand-hold lawyers that are of this caliber to do something like that. All right?"); *Storey v. O'Brien*, No. 08-CV-4844(SJ)(RLM), 2010 WL 11507539 (E.D.N.Y. July 14, 2010) (". . .the Court is not required to hold counsel's hand through every procedural step of litigation."); *Chao v. Gary Bauerly*, LLC, No. CV 03-6200(PAM/RLE), 2005 WL 8163087, at *2 (D. Minn. Mar. 11, 2005)("The role of the Court is not to "hand hold" counsel for the parties when they choose not to abide by the "meet and confer" directives of both the Federal Rules of Civil Procedure, and the Local Rules of this Court.").

Having reviewed *in camera* the informal discovery produced by Regal Cinemas, Inc., the court concludes that the discovery is sufficient, for present purposes only, to show that the biometric information in question has been destroyed.

The key documents are these. First, a screenshot of putative class representative Oshea Jenkins's employee profile from Regal's payroll system (029) reflects that no biometric information is being held. Second, Regal's internal emails from 2018 (e.g., 027, 053) reflect that it implemented a plan to destroy all the biometric information it had. While those biometric records apparently were backed up on Kronos servers, a Kronos document obtained via subpoena indicates that it deletes backups within 28 days.

The sources of potential theoretical uncertainty raised by Jenkins, Doc. 46 at 2-4, 6-13, are not a cause for concern at this stage. Essentially, Jenkins seeks a detailed chain of digital custody, from scanner to server to deletion, with every step fully accounted for. Although Regal has not produced it, it did produce internal emails from 2018, written long before this case began, reflecting that a full-scale deletion was carried out. A sworn declaration echoes what the emails reflect. For purposes of this limited discovery exercise, that is enough, as the pertinent question at this stage is not whether to enter judgment for Regal on the Section 15(a) injunctive relief claim, but rather whether Jenkins can be reasonably sure that her interests in the deletion of her biometric information (and that of the putative class) are reasonably satisfied pending the Seventh Circuit's resolution of Cothron.

[Dkt. ]#51].

The plaintiff didn't agree then, and doesn't agree now. [Dkt. #95, Pars. 50-54].[2] In any event,

___

[2] One can hardly blame the plaintiff for her concerns. Cyber security breaches are a regular occurrence, and they come despite repeated assurances from companies, organizations, and governments that they are keeping our personal data safe. See, e.g., https://en.wikipedia.org/wiki/Office_of_Personnel_Management_data_breach; https://www.reuters.com/world/us/data-237000-us-government-employees-breached-2023-05-12/; https://www.digitalguardian.com/blog/top-10-biggest-us-government-data-breaches-all-time; https://en.wikipedia.org/wiki/2017_Equifax_data_breach; https://www.wired.com/story/23andme-breach-sec-update. But, it does not appear that any system is immune to hackers, and that would include cutting-edge fingerprint timeclocks. See https://www.techtarget.com/searchsecurity/news/252513513/Kronos-attack-fallout-continues-with-data-breach-disclosures; https://www.npr.org/2022/01/15/1072846933/kronos-hack-lawsuits; https://www.cnn.com/2021/12/16/tech/kronos-ransomware-attack/index.html.

Identity theft is undeniably deadly serious when it involves Social Security numbers, bank and investment accounts. But, a person's fingerprints are about as personal as it gets. As another judge noted
(continued...)

the stay continued through the end of 2021. At that point, the Seventh Circuit decided that it would be up to the Illinois Supreme Court to figure out what the Illinois lawmakers intended each fingerprint scan to be a separate claim. [Dkt. #62]. That wasn't a great point for the Illinois legislature to be vague on because of the statute of limitations and the potential for millions, if not billions, of dollars in damages accumulating if each scan was a separate claim. For example, in this case, it looks as though the plaintiff had to clock in with her fingerprint about 626 times during her employment with the defendant. [Dkt. #137-6, Page 3 of 5]. A plaintiff may recover $1,000 for each negligent violation of the Act, and $5,000 for each intentional violation of the Act. 740 ILCS 14/20. So, if BIPA were interpreted to allow for "per-scan" damages, this is a $626,000 to $3,130,000 damages case.

During February and March of 2022, the parties squabbled over whether plaintiff could file an Amended Complaint and whether certain materials were confidential. Judge Feinerman allowed the plaintiff to file an Amended Complaint but said the argument on the confidentiality of the materials was moot. [Dkt. #73, 74]. The *Cothron* stay dragged on through the summer of 2022 and, in September 2022, was doubled up with an automatic bankruptcy stay. [Dkt. #78, 80]. At the end of the year, the case was reassigned to Judge Bucklo when Judge Feinerman left the Bench. [Dkt. #83]. The Illinois Supreme finally ruled on the *Cothron* issue in February of 2023, deciding that "a separate claim accrues under the Act each time a private entity scans or transmits an individual's

---

[2](...continued)
in another one of these myriad BIPA cases, "[a]fter all, a fingerprint is permanent, and each of us gets only one set." *Rowe v. Papa John's Int'l, Inc.*, No. 23-CV-2082, 2024 WL 3925411, at *2 (N.D. Ill. Aug. 23, 2024). *See also Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 8621957, at *2 (N.D. Ill. Dec. 13, 2023)("[we live] in an era where we read about companies and governments that collect and store such information being hacked on a seemingly regular basis. . . . when it involves fingerprints or other biometric data, the stakes are higher.").

biometric identifier or information in violation of section 15(b) or 15(d)" of the Act. *Cothron v. White Castle Sys., Inc.*, —— Ill.Dec. ——, —— N.E.3d ——, ——, 2023 WL 4567389, at *1 (Ill. Feb. 17, 2023); *Cothron v. White Castle Sys., Inc.*, 79 F.4th 894, 895 (7th Cir. 2023). As the Illinois Supreme Court acknowledged, its decision opened the door to "potentially excessive damage awards" under the BIPA. *Cothron*, 466 Ill.Dec. 85, 216 N.E.3d at 929. In other words, as already suggested, at that point, based on the *Cothron* holding this was a $626,000 to $3,130,000 case.[3] As such, the Illinois Supreme Court "respectfully suggest[ed] that the legislature review these policy concerns and make clear its intent regarding the assessment of damages under the [BIPA]." 466 Ill.Dec. 85, 216 N.E.3d at 929.

A few months later, the bankruptcy proceeding concluded at the end of June 2023. [Dkt. #91]. Judge Bucklo lifted the stay on September 5, 2023 [Dkt. #92] and allowed the parties an entire year to complete fact discovery, setting the deadline as September 30, 2024. [Dkt. #94]. The plaintiff filed a second Amended Complaint [Dkt. #95], and the defendant moved to dismiss it on November 24, 2023. [Dkt. #96]. Briefing on the motion wasn't completed until the end of January 2024, and Judge Bucklo denied the defendant's motion on March 1, 2024. [Dkt. #112]. A few months after that, the Illinois legislature, along with the Governor, took up the Illinois Supreme Court's six-month-old invitation and amended BIPA such that multiple scans of the same person by the same method constituted "a single violation." As already noted, the statute had been vaguely

---

[3] If that seems like a lot of damages, those numbers could be easily avoided. Often, a good rule to follow is: "Just because you can, doesn't mean you should." One has to wonder why a company would have its employees log in to work to sell popcorn and scan movie tickets using biometric data. Why not a key card or a pass code? Both can be deactivated and replaced if lost, stolen or compromised. A fingerprint scan does seem like overkill for checking in movie theatre employees. Indeed, in one of its submissions, defendant seems to concede that it was way out over its skis in employing this technology because it's just "a theatre operator, not a software developer or a hardware vendor." [Dkt. #151, at 2].

drafted, so it had to be fixed. But, the Legislature didn't fix it all the way. It threw another monkey wrench into the scores of BIPA cases pending, the vast majority of which seem to be proceeding here in the Northern District of Illinois by leaving open another extremely significant question. Is the amendment retroactive? *See, e.g., Gregg v. Cent. Transp. LLC*, No. 24 C 1925, 2024 WL 4766297, at *4 (N.D. Ill. Nov. 13, 2024). Or not? *See, e.g., Schwartz v. Supply Network, Inc.*, No. 23 CV 14319, 2024 WL 4871408, at *5 (N.D. Ill. Nov. 22, 2024). The Illinois Legislature certainly could have made the answer plain, but, following the pattern it had already established, left that question to be answered by costly, time-consuming litigation.

And it is not a small point, as this case illustrates. If the amendment is to be applied prospectively, again, this is a $626,000 to $3,130,000 case. If the amendment is to be applied retroactively, this might be a $1000 to $5000 case. That would not even have been enough for diversity jurisdiction. See, e.g., *Gregg*, 2024 WL 4766297, at *4 (dismissing case for lack of diversity jurisdiction after finding the BIPA amendment applied retroactively). What is more, the massive difference in the value of the case should have a significant impact on discovery. For one thing, Fed.R.Civ.P. 26(b)(1) requires that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." A year and a half of fact discovery – which is what the parties will have enjoyed if the lawyers managed to wrap this up by the current deadline of February 14, 2025 [Dkt. #149] – seems about right for a $626,000 to $3,130,000 case. At least in the abstract it seems ridiculous for a $1000 to $5000 case. The retroactivity question also has an effect on what discovery is relevant.

Obviously, the question the Illinois legislature left unanswered is not the type of issue that should be interjected in a case that is well into its fifth year.

Now, with all that uncertainty in the background, here are the rulings on the parties' disputes.

## II.

### Plaintiff's Renewed Motion to Compel Discovery Regarding Damages and Defendant's Efforts to Comply With The Illinois Biometric Information Privacy Act [Dkt. #137]

We begin with the first of the three discovery motions. It addresses the defendant's responses – or lack thereof –to Interrogatories 6, 7, 12, 4 and Document Requests 7 and 8. Reviewing the parties' submissions on this part of their extensive dispute, a pattern emerges wherein the defendant lodges the same types of inappropriate objections, over and over. In most cases, the defendant is arguing substantive issues which, of course, is a waste of the plaintiff's time and the courts time in discovery proceedings. As such, we need not go into each of the defendant's responses and arguments in depth as the first couple of interrogatories at issue – numbers six and seven – serve as an example of what the plaintiff – and now the court – has to deal with.

> **Interrogatory 6**– Describe with specificity each location in which Plaintiff's fingerprint data, Finger Templates, biometric identifiers, and/or biometric information was ever stored, and with respect to each such location, identify who controls it.

> **Interrogatory 7**– With respect to each location responsive to Interrogatory No. 6, state the date(s) on which Plaintiff's fingerprint data, Finger Templates, biometric identifiers, and/or biometric information were permanently destroyed from that location, identify all persons involved in the destruction, and describe each person's role in the destruction.

These are rather simple questions. All one has to do to answer them is identify the locations – servers and where they are – and who is in charge of those locations. And, if the data at issue was

permanently destroyed, say when and by whom. These may not be as simple a question as "what time is it", but the defendant's answers are equivalent to detailed instructions on how to build a watch.

Defendant begins by objecting to the terms "fingerprint data" and "Finger Templates." [Dkt. #137-2, at 8]. But, terms like that have been used in BIPA case after BIPA case. *See, e.g., Tri City Foods, Inc. v. Commerce & Industry Insurance Company*, No. 24 C 414, 2024 WL 4894274, at *1 (N.D. Ill. Nov. 26, 2024)(fingerprint data); *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *4-6 (N.D. Ill. Sept. 29, 2024)(fingerprint template); *Rowe v. Papa John's Int'l, Inc.*, No. 23-CV-2082, 2024 WL 3925411, at *2 (N.D. Ill. Aug. 23, 2024)(fingerprint data); *Robinson v. Lake Ventures LLC*, No. 22 CV 6451, 2023 WL 5720873, at *5 (N.D. Ill. Sept. 5, 2023)(fingerprint data); *Castro v. El Milagro, Inc.*, No. 22 C 03943, 2023 WL 4625777, at *1 (N.D. Ill. July 19, 2023)(fingerprint data); *Ronquillo v. Doctor's Assocs., LLC*, 597 F. Supp. 3d 1227, 1231 (N.D. Ill. 2022)(fingerprint template); *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 836 (N.D. Ill. 2021)(fingerprint data and fingerprint templates). While defendant's objection isn't one of the tired, hackneyed boilerplate objections that lawyers reflexively lodge, see, e.g., *Moran v. Calumet City*, 54 F.4th 483, 497 (7th Cir. 2022); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015); *Flores v. Guevara*, No. 23 C 1736, 2024 WL 4203080, at *2 (N.D. Ill. Sept. 16, 2024*); Stephenson v. City of Chicago*, No. 21 CV 338, 2024 WL 3252332, at *6 n. 5 (N.D. Ill. July 1, 2024); *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726, at *1 (N.D. Ill. July 29, 2021); *Ezell v. City of Chicago*, No. 18 C 1049, 2021 WL 2136395, at *7 (N.D. Ill. May 26, 2021), but it is just as big a waste of the court's time.

From there, the defendant launches into the "how to build a watch" phase of its answer. It refers the reader to "Kronos, Incorporated's Responses to Pl's Second Subpoena for Production of Documents, General Objections and Definitions." Kronos is, for lack of a better phrase, one of the usual suspects in these BIPA cases. *See, e.g., Davis v. Heartland Emp. Servs., LLC*, No. 19 C 680, 2020 WL 13543768, at *1, 3 (N.D. Ill. Nov. 13, 2020); *Meegan v. NFI Indus., Inc.*, No. 20 C 465, 2020 WL 3000281, at *3 (N.D. Ill. June 4, 2020); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772 (N.D. Ill. 2020); *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1046 (N.D. Ill. 2020); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 284 (N.D. Ill. 2019); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17 C 8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018).[4] The court isn't provided with a copy of Kronos's Responses– perhaps blessedly so given the mass of exhibits the parties have submitted in this run-of-the-mill discovery squabble – but defendant helpfully quotes the "pertinent part" in its answer:

> [T]he timekeeping units detect unique characteristic points from a finger scan. Those points are then converted by an algorithm to create a unique mathematical template for each employee. No finger scan and no image associated with it is stored or kept as part of the process.

[Dkt. # 137-2, at 8].

Interesting, but not an answer to the interrogatory. While this case is over four and a half years old, it is, nevertheless still mired in the discovery phase. And, for the purposes of *discovery* in this case, a "unique mathematical template" is as good as "fingerprint data" or a "fingerprint template." It's data derived from the fingerprint scanned and, for the system to recognize the person

---

[4]And, just like any other company, they are not immune to security breeches. Https://www.techtarget.com/searchsecurity/news/252513513/Kronos-attack-fallout-continues-with-data-breach-disclosures; https://www.npr.org/2022/01/15/1072846933/kronos-hack-lawsuits; https://www.cnn.com/2021/12/16/tech/kronos-ransomware-attack/index.html.

clocking in every time, that data has to be able to be compared, in a meaningful way to the employee's fingerprint when they "clock" in. Otherwise, what is the point of all the technology? *Cf. Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 8621957, at *4 (N.D. Ill. Dec. 13, 2023)(discussion on finger scan technology and conversion). The cases the defendant cites, as the defendant is aware, are rulings on a motion to dismiss and a motion for summary judgment, not discovery rulings. If the defendant wants a dispositive ruling on the issue of whether Kronos' "unique mathematical template" is covered by BIPA, it has had four and a half years to raise that issue in a motion to dismiss or a motion for summary judgment. *See Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019)(federal practice allows a party to file a motion for summary judgment at any time, even along with a defendant's answer); *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019)("The mere fact that discovery is incomplete is not enough to prevent summary judgment."). It has not done so. If defendants could avoid their discovery obligations merely by claiming in their objections that they didn't do what the plaintiff alleges they did, there would be no discovery. *See Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2022 WL 17082587, at *2 (N.D. Ill. Nov. 18, 2022)("In other words, defendant says, in effect, "move along, there's nothing to see here." But, until Judge [Perry] decides there's nothing to see here, defendant is on the hook for discovery.").

Next – and remember, this is all still the answer to a simple question – the defendant says in response to Interrogatory 6 that it "permanently destroyed Plaintiff's mathematical template years before she filed this lawsuit . . . ." [Dkt. 137-2, at 9]. Great, but *when*? Defendant first says, vaguely, that it migrated "templates from its own server WFCSQLSVR to the Kronos SaaS Cloud" "in late 2016 or 2017." So, is one to take that as defendant conceding that it doesn't know when, exactly, the templates began being stored in Kronos' cloud. The defendant claims that migrating the data to

12

Kronos's cloud from "server WFCSQLS" is somehow the equivalent of destroying the data. It sure doesn't sound like it; it sounds like the data or templates are in Kronos's cloud. And, the question remains, "who controls [or controled] it?"

Things get even more vague in defendant's answer to Interrogatory 7. Initially, the defendant seems to have no idea, exactly, how the fingerprint data was destroyed. It says that "commonly" there are three was to do it. [Dkt. #137-2, at 11]. So, again, defendant is avoiding the question of 'what time is it' and explaining different ways a watch can be made. The defendant then says Kronos provided it with "queries or scripts to run to delete permanently all mathematical templates associated with its time clocks and Regal Cinemas implemented those steps nationwide" and that it ran those queries and scripts nationwide beginning "no later than February 15, 2018, and. . .completed [the process] by June 12, 2018." [Dkt. #137-2, at 11]. So, if these "queries or scripts" did the trick, the defendant doesn't know exactly when the plaintiff's data was destroyed. And, didn't the defendant say, in response to Interrogatory 6, that the data was "destroyed" when it was migrated to Kronos's cloud? That was, supposedly, "in late 2016 or 2017." That's a completely different time frame than February 15, 2018 to June 12, 2018.

Obviously, the plaintiff's motion is granted as to Interrogatories 6 and 7. Within 14 days, the defendant must provide responses that (1) specifically describe all locations that plaintiff's biometric template was stored, (2) explicitly addresses whether and when plaintiff's template was migrated to Kronos' servers, (3) state the date that plaintiff's mathematical template was permanently destroyed from Regal's server and every other location in which it was ever stored. If the defendant doesn't know or cannot be exact, it must concede as much in its response.

**Interrogatory 12**– Identify and describe in detail the substance of each publicly-available written policy Regal had in effect at any time since December 1, 2014 establishing a retention schedule and guidelines for permanently destroying biometric identifiers, biometric information, fingerprint data, and/or Finger Templates. For each such policy, please: (a) state the date range during which it was in effect and available to the public; and (b) describe with specificity how the public was able to obtain a copy of it.

Defendant simply refuses to answer this question at all. As with its rambling responses to Interrogatories 6 and 7, it argues that plaintiff doesn't have a claim under BIPA, and again cites a number of rulings on substantive motions. But, again, in the four and a half years this case has dragged on, defendant has not presented any substantive motions on these issues. As such, discovery into its written policies is fair game.

The plaintiff's motion is granted as to Interrogatory 12. Within 14 days, the defendant must either unequivocally state that it had no written policy made available to the public that established a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, or that describes in detail each such policy the defendant had and provides as to each such policy the other information sought in the interrogatory.

**Interrogatory 4** –With respect to each Time Clock responsive to Interrogatory No. 3, state the total number of times Plaintiff used it and the date and time of each use.

While the defendant objected to this interrogatory based on yet another substantive issue that the defendant has failed to raise in a proper motion before the District Court Judge, the defendant does point the plaintiff to REGALCINEMAS0364-391 and REGALCINEMAS427-442. [Dkt. #137-2, at 7-8]. But, while Fed.R.Civ.P. 33(d)(1) does allow a party to answer an interrogatory by

14

specifying business records that will provide an answer, that only applies to situations where "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed.R.Civ.P. 33(d). That's not the case here. These are, after all, the defendant's time clock records, so it will be much easier and more efficient for the defendant to provide a simple answer to the question of how many times the defendant had the plaintiff scan her finger to clock into work. This is underscored by the rather convoluted explanation the defendant provides for how to translate the twenty-five pages of records of plaintiff clocking in and out of work, three pages of "Timecard Manager Edits," and sixteen pages of "Exceptions." [Dkt. #137, at 7-8]:

> The bold red letter "I" on the "comment bubbles" on the time cards correspond respectively to the "Exception" and "Comment" columns on the Exceptions report. For example, the bold red letter "I" on the December 22, 2014, time card corresponds to "unscheduled" under the "Exceptions" column on the Exceptions report, while the "comment bubbles" on the time card correspond to *New Hire Paperwork"* (in italics) under the "Comment" column on the Exceptions report.

[Dkt. #150, at 11]. That may have some meaning to someone in the defendant's HR department, but it has no meaning to the court and understandably has no meaning to the plaintiff. The question is not about bubbles and exceptions, it is a simple question about how many times the plaintiff was made to scan her finger. To make matters worse, the defendant seems to suggest that the very documents it directs the plaintiff and the court to – all those bubbles and comments – do not provide the answer at all because the reports do not "show[] if time punches were done via scan or employee code." [Dkt. # 150, at 11]. If that's the case, it was inappropriate to cite these records under Fed.R.Civ.P. 33(d).

But, it gets even a little bit worse. It would seem that plaintiff's counsel did yeoman's work sifting through all those bubbles, comments, and exceptions and came up with a figure: 626. The

plaintiff then put that number to defendant in a request to admit, and the defendant –after its usual inappropriate objections – denied the plaintiff used the scanner/timeclock that many times. [Dkt. #137-6, Page 3 of 5]. In order to make such a denial, the defendant would have to know the answer to Interrogatory 4. The defendant shall provide that answer to the plaintiff within in 7 days.[5]

> **Document Request 7**– Each publicly-available written policy Regal had in effect at any time since December 1, 2014 establishing a retention schedule and guidelines for permanently destroying biometric identifiers, biometric information, fingerprint data, and/or Finger Templates, including documents and communications reflecting the date range during which each policy was in effect and publicly-available, and how the public was able to obtain each policy.

> **Document Request 8**– All documents and communications that discuss, evidence, or reflect whether or not Regal complied with any publicly-available written policy responsive to Request No. 7 above, including but not limited to documents and communications reflecting the date(s) and manner of compliance.

Once again, the defendant makes the same kinds of inappropriate objections tied to substantive issues that it has failed to seek any resolution of in the four and a half years of this case. Beyond that, in response to Request 7, defendant points the plaintiff to the May 12, 2021 Declaration of Joseph Marlowe, and to documents produced by UKG Kronos Systems, LLC, at KRONOS_000533-544, 000981-000982, 001004-001005, 001023-001049, 001094-001123 and 001124-001126. The court cannot see how documents from Kronos regarding its inner workings are publicly available written policies that the defendant maintained, and the defendant's response brief certainly provides no enlightenment. [Dkt. #150, at 9]. As such, the defendant has provided no

---

[5] Curiously, the defendant likens this situation to the one that Magistrate Judge Valdez addressed in *Craftwood Lumber Co. v. Essedant, Inc.*, No. 16 C 4321, 2017 WL 11570800, at *5 (N.D. Ill. Mar. 10, 2017). [Dkt. #150, at 12]. There, Judge Valdez allowed the defendant in a junk fax case to resort to Fed.R.Civ.P. 33(d) to respond to multi-faceted interrogatories asking for extensive information for each of thousands of faxes, including names, addresses, telephone numbers, employment, and relationship. It's plain to see that this case – where all the plaintiff is asking the defendant for is a single number – has nothing to do with *Craftwood*.

evidence of any written policies *it* had, and so, as plaintiff contends, the documents the defendant refers to in response to Request 8 – REGALCINEMAS001-55, and REGALCINEMAS303-363 – cannot be probative of the defendant complying with the written policies it had.

The plaintiff's motion is granted as to requests 7 and 8. The defendant must either produce responsive documents or unequivocally state that it does not have any responsive documents in its possession, custody, or control, within 14 days.

### III.

### Plaintiff's Renewed Motion to Compel Discovery Regarding Defendant's State of Mind and Affirmative and Other Defenses [Dkt. #140]

**Interrogatory 14** – With respect to each defense that you raise in this lawsuit, describe in detail all facts that support or form all or part of the basis for the defense, and specifically identify all evidence that you contend reflects or establishes any of those facts, including for documentary evidence the Bates numbers of all documents and specific pages thereof which contain the responsive information.

The court finds that the defendant's answer is acceptable for defenses 1, 6, and 24. But defendant refuses to respond to this contention interrogatory for its other 23 "Affirmative and Other defenses" it has lodged against plaintiff's Complaint. That's unacceptable. Defendant first objects that due to the number of defenses the defendant chose to assert, the interrogatory's subparts exceed the 25-interrogatory limit. See Fed.R.Civ.P. 33(a)(1). That's a bit disingenuous because obviously, the defendant chose to assert one defense after another to the extent that they totaled just over the limit. In defendant's way of thinking, it can avoid any inquiry into the bases for its defenses if it asserts enough of them.

The court will not waste its time parsing and counting "discrete subparts." While that pursuit may be fun for many lawyers, *see, e.g., Am. Council of Blind of Metro. Chicago v. City of Chicago*,

17

No. 19 C 6322, 2021 WL 5140475, at *1 (N.D. Ill. Nov. 4, 2021); *Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-01060, 2021 WL 4745376, at *7 n.8 (N.D. Ill. Oct. 12, 2021); *Coleman v. Illinois*, No. 19 C 3789, 2021 WL 4242465, at *3 (N.D. Ill. Apr. 30, 2021); *Vera Bradley Designs, Inc. v. Aixin Li*, No. 20 C 2550, 2021 WL 1088323, at *4 (N.D. Ill. Mar. 22, 2021); *New York Life Ins. Co. v. Peters*, No. 19 C 2269, 2021 WL 229659, at *3 (N.D. Ill. Jan. 22, 2021); *Schloss v. City of Chicago*, No. 18 C 1880, 2020 WL 12178208, at *2 (N.D. Ill. Oct. 2, 2020); *Hangzhou Aoshuang E-Complaint. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *2 (N.D. Ill. June 23, 2020), it's not fun for courts, especially in what may be a $1000 case. Moreover, not too much effort should be expended along such lines because "[t]here is no bright-line test on how to count parts of interrogatories." *Jacks v. Directsat USA, LLC*, No. 10 C 1707, 2011 WL 382858, at *2 (N.D. Ill. Feb. 1, 2011). One person sees a single-themed interrogatory, while another sees five "discrete subparts." See Wright & Miller, Federal Practice and Procedure, § 2168.1("[A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," whereas "an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."). So, the court will say only this. Many of the defendant's 26 defenses are along the same "mathematical template" theme, so there are not even close to 25 "discrete subparts."

But, this case might also be a $3.25 million case, so the defendant's rote, boilerplate objection of "overbroad, unduly burdensome and disproportionate to the needs of the case" don't cut it. Neither does its completely undeveloped assertion that all of the information supporting its defenses is "protected by the attorney-client privilege and/or the attorney work product doctrine." See, e.g., Fed. R. Civ. P. 33(a)(2)("An interrogatory is not objectionable merely because it asks for

an opinion or contention that relates to fact or the application of law to fact."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)("… either party may compel the other to disgorge whatever facts he has in his possession."); *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012)("[Plaintiff] is entitled to know the theories under which the … Defendants are proceeding and the factual basis of their contentions."); *Auto Meter Prod., Inc. v. Maxima Techs. & Sys.*, LLC, No. 05 C 4587, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006)(noting that "after considerable discovery … courts routinely compel the resisting party to answer" contention interrogatories that "require the answering party to commit to a position and give factual specifics supporting its claims."); *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 8179365, at *2 (N.D. Ill. Sept. 8, 2005)("… the court does not intend to reject as overly broad or unduly burdensome all of Defendant's contention interrogatories that seek the underlying facts and supporting materials of Plaintiffs' case.").

But, courts have the obvious and necessary discretion to rein in parties from asking for every fact and piece of evidence that supports a contention, which is what the plaintiff has done here. It is generally enough that a responding party offers the principal or material facts that support its contentions. *See, e.g., Segerdahl Corp. v. Ferruzza*, No. 17-CV-03015, 2018 WL 11199218, at *4 (N.D. Ill. Mar. 9, 2018); *Am. Needle inc. v.New Orleans*, 2012 WL 4327395, at *2 (N.D.Ill. Aug. 17, 2012); *Fox v. City of Austin*, No. 1:22-CV-00835-DAE, 2023 WL 6119383, at *5 (W.D. Tex. Sept. 18, 2023); *Santillan v. Verizon Connect, Inc.*, No. 21CV1257-H-KSC, 2022 WL 428170, at *2 (S.D. Cal. Feb. 10, 2022); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV14MD2542VSBSLC, 2020 WL 6290584, at *3 (S.D.N.Y. Oct. 27, 2020). Nothing more than material or principal facts should or will be required from the defendant, but it does have some work

to do and are going to have to clean up and supplement the answers it provided.

Finally, the defendant completes its response to Interrogatory 14 by directing the plaintiff to over 3000 pages of documents. That, too, is unacceptable. Although Fed.R.Civ.P. 33(d) allows parties to respond to interrogatories by referencing business records, that doesn't apply to contention interrogatories. *Culp v. Reed*, No. 119 CV 00106WCLSLC, 2021 WL 1341256, at *3 (N.D. Ind. Apr. 8, 2021); *United States v. Supervalu, Inc.*, No. 11-3290, 2018 WL 3219448, at *2 (C.D. Ill. July 2, 2018); *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594-95 (D.D.C. 2016)(collecting cases). That makes sense here, as the plaintiff should not be made to "answer its own interrogatories by filtering a mass of documentary evidence through an adversary's legal lens." *Landis*, 317 F.R.D. at 594. At the very least, the defendant must categorize the documents they cite by defense and explain how those documents support each defense. The defendant must provide its amended response within 21 days.

> **Document Request 16**–All brochures and other marketing, advertising, sales, and promotional materials, presentations, proposals, and/or requests therefor about or related to any Time Clock Regal used to record Plaintiff's time and/or attendance. This Request is not limited in time.

> **Document Request 17**– All documents and communications you sent to or received from Kronos about or related to fingerprint data, Finger Templates, biometric identifiers, biometric information, and/or any Time Clock Regal used to record Plaintiff's time and/or attendance.

In response to these two document requests, the defendant first lodged its boilerplate objections. Then, in response to Request 16, the defendant directed the plaintiff to 'responsive documents produced by UKG Kronos Systems, LLC, to the extent that they pertain to the time clock and are limited to the period of Plaintiff's employment, i.e., December 22, 2014 to May 26, 2016."

In response to Request 17, it directed the plaintiff to "its earlier production of documents as well as responsive documents produced herewith, Bates stamped REGALCINEMAS294-302 and REGALCINEMAS303-363." The defendant calls the documents targeted by these requests only "marginally relevant" [Dkt. #152, at 12], but the court agrees with the plaintiff that they are clearly relevant to what the defendant knew about the timeclocks and thus, whether it acted negligently, intentionally or recklessly. Thus, directing the plaintiff to documents Kronos produced is unresponsive to request 16. The idea is to find out what the *defendant* knew about its timeclocks.

As for the defendant's response to request 17, the production seems paltry. Surely the defendant has responsive documents prior to a 2016 work order and 2018 emails. It was using the system well before that. Accordingly the plaintiff's motion to compel is granted as to Requests 16 and 17. The defendant must redouble its efforts to search for and produce documents responsive to these requests. It must produce those documents within 14 days. Given the defendant's position in its response brief that it already has done all it can, the defendant will also provide a sworn statement detailing its search.

## IV.

### Plaintiff's Motion to Deem Admitted First Set of Requests for Admissions to Defendant [Dkt. ##141, 142]

Finally, we come to the plaintiff's motion to deem its first set of requests for admissions admitted. The plaintiff has various problems with the defendant's responses to Requests 1, and 5-29. That's twenty-six out of thirty-one requests. Again, the lawyers involved in this case clearly have not taken their responsibilities under Local Rule 37.2 seriously at all. That's mostly on the defendant.

Federal Rule of Civil Procedure 36(a)(1)(A) allows a party to serve "on any other party a written request to admit ... the truth of any matters within the scope of Rule 26(b)(1) relating to ... facts, the application of law to fact, or opinions about either." The responding party can either answer or object to a request to admit, and if answering, may: (1) admit the matter; (2) deny the matter; or (3) state "in detail" why he "cannot truthfully admit or deny" it. Fed. R. Civ. P. 36(a)(4) & (a)(5). Any denial must "specifically deny" the matter and "fairly respond to [its] substance." Fed. R. Civ. P. 36(a)(4). If a responding party lacks the "knowledge or information" to admit or deny a request to admit, it must state that after a "reasonable inquiry ... the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(3), (a)(4). For the most part, the defendant has lodged unamplified objections, but has also denied the requests to admit at issue. Obviously, one can't do both.

For example, in answering Request 1, the defendant objects to the use of the term "Finger Scan sensor," seemingly claiming it doesn't know what it is. But, despite that objection, the defendant nevertheless denies that "[a] Finger Scan sensor was a component of the timeclock." [Dkt. #141-1]. That makes no sense. If you don't know what a finger scan sensor is, how can you deny that your timeclock had one? If the timeclock the defendant installed was anything like the ones depicted in the literature from the vendor the defendant got the timeclock from, it certainly seems like it did have a finger scan sensor. See, e.g., [Dkt. #141-2, page 2 of 3; #142-2, page 3 of 5; #142-3, page 2 of 4;#142-3, page 3 of 4]. In response to Request 5, which asks the defendant to admit or deny that "[t]he timeclock converted Plaintiff's finger scan image into a mathematical template of Plaintiff's fingertip," the defendant claims that it doesn't know what "mathematical template" means. That's a surprise because it's a term the defendant has used throughout this litigation. *See,*

*e.g.*, Defendant Regal Cinemas' Answers to Plaintiff's First Set of Interrogatories [Dkt. #141-2];
Defendant Regal Cinamas' Responses to Plaintiff's First Set of Document Requests [Dkt. #141-8];
see also Kronos InTouch 9100 User Guide [Dkt. #142-2, page 4 of 5]. Indeed, it would seem the
all of the terms that "baffled" the defendant originated with the defendant or its vendor, Kronos.
The court is not going to expend further judicial resources going through the defendant's responses
one by one. It's safe to say that the defendant takes a similar tack with respect to not only Requests
1 and 5, but Requests 6 through 28 as well, saying, essentially, "I don't know what you're saying we
did, but we didn't do it."

The defendant also objects that Requests 5, 11, 14, 19, 21-22, 24-26, 28 are "impermissibly
compound." For example, the defendant contends that the statement "[t]he timeclock converted
Plaintiff's finger scan image into a mathematical template of Plaintiff's fingertip" is "impermissibly
compound." What's "impermissibly compound" about that? Either it did, or it didn't. The
impression is that the defendant is merely engaging in obfuscation by inexplicably claiming requests
are "impermissibly compound." After all, if, as the defendant claims, "[t]he timeclock converted
Plaintiff's finger scan image into a mathematical template of Plaintiff's fingertip" is "impermissibly
compound", why isn't Request 15 – "[t]he timeclock collected a mathematical template of Plaintiff's
fingertip" – also "impermissibly compound? Defendant lodged no "impermissibly compound"
objection to that request. And, as with defendant's definitional objections, how can the defendant
say a statement is too compound to respond to and then deny it?

In a similar vein, the defendant objects to Requests 5-18, 20 because the issues in those
requests are "properly the subject of expert testimony and/or testimony by UKG." So, the court takes
it that these statements are beyond the ken of the defendant and its lawyers, at least until they've

gone through expert discovery with their experts. Fine, but again, Fed.R.Civ.P. 36 does not allow for a party to claim it has not idea what a request means but deny it anyway. And frankly, the court isn't buying the defendant's protestations of ignorance.

The plaintiff raises some additional issues with the defendant's responses, but the court will not delve further into this squabble at this time. Suffice it to say that, from what the court has seen, the defendant's responses are unacceptable. The plaintiff's motion is granted insofar as the defendant must submit proper response to Requests 1, 5-29. Within 21 days, the defendant must admit, deny, *or* object to the requests. As already noted, the foregoing objections the defendant has lodged are inappropriate. If the defendant does wish to lodge an objection rather than admit or deny a request, it must explain in detail the objection. The defendant may only state that it lacks the knowledge or information to admit or deny a request if it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny the request. And if so, it shall explain the nature and scope of the inquiry.

## VI.

In the end, this extensive discovery dispute over rather routine requests is a perfect example of lawyers not taking Local Rule 37.2 seriously. Most, if not all of the objections the defendant lodged are completely out of place in a discovery dispute and that should have been clear to defendant's lawyers. Again, if the defendant thinks it isn't liable, it has had well over four years to file an appropriate motion. Surely the defendant's lawyers knew – and know – that the court is not going to resolve the major substantive issues of a case on a referral for "Discovery Supervision and Settlement Conference." [Dkt. #117]. *See, e.g., United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2024 WL 3028958, at *6 (N.D. Ill. June 17, 2024)("While Fed.R.Civ.P. 59(b) allows a

party to "file a motion for summary judgment at any time until 30 days after the close of all discovery," it's a stretch to think that includes filing one in a response an interrogatory.").

Moreover, it makes it worse that these objections come after the defendant was accommodated with nearly 140 days of extensions by the court.[6] No court nor opponent would have denied the defendant those accommodations given what defense counsel was going through [Dkt. #134, Par. 3; #148, Pars. 4-5], and the court doesn't mean to insinuate that defendant had to capitulate in return for them. But, it was an opportunity for the defendant to accept the accommodations with grace and, at least, be reasonable.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/13/25

---

[6]Plaintiff's counsel had an issue as well, but not as significant or time-consuming as that of defendant's counsel.